RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 8/31/11
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RAYMOND GREEN, <br> Petitioner <br><br> VERSUS <br><br> WARDEN, LOUISIANA STATE PENITENTIARY, <br> Respondent | CIVIL ACTION <br> SECTION "P" <br> 1:10-CV-00841 <br><br><br> JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Raymond Green ("Green") on May 18, 2010. Green is contesting his conviction, by a jury in the Louisiana Ninth Judicial District Court in Rapides Parish, on one count of second degree murder. Green was sentenced to life imprisonment and is presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.

Green raises the following grounds for habeas relief:

1. Ineffective assistance of counsel for failure to impeach a state witness, failure to investigate the case, and denial of Green's right to testify.

2. Insufficient evidence to support Green's conviction for second degree murder, due to the fact that the 16-year-old defendant, Green, was too immature to form the specific intent to kill.

Green alleges and the Respondent admits exhaustion of Green's

state court remedies.[1] The Respondent files a brief in response to Green's petition. Green's habeas petition is now before the court for disposition.

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

---

[1] The Respondent contends that one of Green's issues (insufficient evidence) is untimely because it was not presented to this court within one year of that decision (on direct appeal) becoming final. The Respondent errs. The one year limitations period does not run from the time the decision rendered in each stage of the state court proceedings becomes final, but instead runs (generally) one year from the conclusion of the last stage of the state court proceedings becomes final. In this case, that is one year from the conclusion of the post-conviction relief proceedings. See 28 U.S.C. § 2244.

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding.  Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal (Doc. 19, pp. 2-3) in State v. Green, 07-275 (La. App. 3d Cir. 10/3/07), 2007 WL 2854527, writ den., 2007-KO-2174 (La. 3/28/08), 978 So.2d 305, are as follows:

> "On the evening of December 30, 2003, the victim, Johnny Ray Mitchell, and his older brother, Demarcus Scales, went to a convenience store in Alexandria, Louisiana to purchase cigarettes. While they were there, Bruce Wright, their first cousin, pulled into the station in a car with the Defendant and Shacarra Booze, the Defendant's girlfriend. Mr. Scales states that his brother and he had known the Defendant all of their lives.
>
> "Mr. Scales asked Mr. Wright to borrow a cell phone and the two began to argue over it. Mr. Scales stated that the two fought over the phone and that they hit each other, although the fight was not serious. Mr. Scales testified that the Defendant then walked over and asked him and his brother about a neck chain, which he had apparently lost in a fight that had occurred earlier in the day. Both responded that they had not been around the previous fight and did not know anything about the chain.
>
> "The Defendant walked away, entered the store, and came back to where the other young men were still arguing about the cell phone. The Defendant then pulled a handgun from his pants and pointed it at Mr. Scales and his brother, who were standing beside each other. The brothers raised their hands and began to back away. Mr. Scales stated that the Defendant told the brothers that one of them was going to die that night. Mr. Scales testified that Mr. Wright then asked the Defendant if he was 'going to do it or what' and the Defendant shot Mr. Mitchell once in the chest. Both Mr. Scales and Mr. Mitchell turned to run, but Mr. Mitchell fell and died after only taking a few steps.
>
> "Mr. Wright and the Defendant returned to the car, where Ms. Booze had remained throughout the incident, and fled the scene. Investigating officers on the scene

determined that the Defendant was a suspect in the shooting. They went to his home, where they found the Defendant being escorted from the house by his father to go the police station to discuss the shooting. The Defendant was arrested and his father accompanied him to the police station. He was subsequently charged with second degree murder."

Law and Analysis

Ground 1 - Ineffective Assistance of Counsel

Green contends he had ineffective assistance of counsel due to his attorney's failure to impeach a state witness (Scales) with his statement to the police, failure to investigate the case and locate an eye-witness (Brown), failure to have the bullet which killed Mitchell tested to see it if matched the bullet hole in Scales' jacket, and denial of Green's right to testify in his own defense.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on

the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052, 2066 (1984). A determination of whether an investigation is reasonable adequate depends upon a variety of factors, including the number of issues in the case, the relative complexity of those issues, the strength of the Government's case, and the overall strategy of trial counsel. Baldwin v. Maggio, 704 F.2d 1325, 1333 (5th Cir. 1983), cert. den., 467 U.S. 1220, 104 S.Ct. 1669 (1984). However, bare allegations do not suffice. A defendant or petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. Nelson, 989 F.2d at 850, citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Under Strickland, even where trial counsel has failed to adequately investigate a case, a defendant must demonstrate that he has been prejudiced by his counsel's failure. See Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th

Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987). To show prejudice, the petitioner must prove that an alleged breach of his attorney's duty to investigate resulted in an actual and substantial disadvantage to the course of his defense. Baldwin, 704 F.2d at 1333.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), 466 U.S. at 689. Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing. Dowthitt, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir.1999).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

1..

Green raised the issue of ineffective assistance of counsel on post-conviction relief, and submitted an affidavit of his trial attorney. The courts denied Green's claim, finding he failed to prove he was denied the right to testify (Doc. 20, p. 25/25). Green contends his defense attorney admitted in his affidavit that he prevented Green from testifying.

Green's attorney stated in his affidavit (Doc. 21, p. 1/25) that he *advised* Green not to testify; this belies Green's argument that his attorney denied him the right to testify. Moreover, Green's attorney also stated in his affidavit (Doc. 21, p. 1/25) that Green was convicted of armed robbery while he was out on bail awaiting trial for the second degree murder at issue herein (See Doc. 29, p. 13/21); that fact would obviously have hurt Green's credibility had it been made known to the jury. Green's argument, that he was too young and immature to have the specific intent to kill, and that he used his gun out of "passion" and "heat of blood" rather than with the specific intent to kill, would have been negatively impacted by evidence of his subsequent use of a gun in the specific intent crime of armed robbery. The evidence that Green had committed armed robbery would have removed any chance that the jury would regard him as merely a hot-blooded, impulsive juvenile who made a mistake.

Finally, Green's attorney stated in his affidavit (Doc. 21, p. 1/25) that, had Green testified that Scales had fired a shot at

Green with a handgun concealed under his jacket, as evidenced by the bullet hole in the jacket, the State was prepared to rebut that testimony with forensic evidence presented by an expert witness (Michael Stelly) to show the hole in Scales' jacket was not caused by a bullet and there was no residual gunpowder on the jacket. If Green had given testimony which would have been thoroughly refuted by an expert forensics witness, Green's credibility before the jury would have suffered even more.

It is apparent that Green's counsel did not err in advising Green not to testify, and Green did not err in taking that advice. In any event, even accepting Green's statement that his attorney "refused" to let him testify, Green cannot show and has not shown prejudice resulting from his inability to testify in his own defense. Green's testimony under the circumstances outlined above would not have changed the outcome of his trial.

Therefore, Green has not shown he had ineffective assistance of counsel in this respect.

2.

Green contends his attorney erred in failing to impeach a state witness (Scales) with his statement to the police and in failing to have the bullet which killed Mitchell tested to see it if matched the bullet hole in Scales' jacket. Green contends that Scales told the police two shots were fired, but testified at trial that only one shot was fired (Doc. 26, p. 11/25). These arguments

goes, again, to Green's version of the event that Scales was also armed, fired at Green, and accidentally shot his brother, Mitchell. Green contends his version of the event is proven by the bullet hole in Scales' jacket. However, as discussed above, the State's forensic expert was prepared to testify the hole in Scales' jacket was not a bullet hole and the jacket did not have any gunpowder on it. Therefore, Scales did not fire a gun from under his jacket and Green's attorney did not err in not having the bullet that killed Mitchell did not come from tested to see it if matched the "bullet hole" in Scales' jacket."

Green also complains that his attorney was ineffective for failing to impeach Scales with his statement to the police. Scales testified at trial that only one shot was fired, but admitted on cross-examination that he told the police he thought he heard two shots. Since Green's attorney cross-examined Scales on this matter and the jury heard Scales admit he told the police he thought he had heard two shots, Green has not shown he had ineffective assistance of counsel in this respect. In any case, it is unclear how Scales' statement to the police would have helped Green at trial, if he said Green also fired at him and hit his jacket, since it tends to show he tried to murder Scales, as well.

3.

Finally, Green contends his attorney failed to investigate the case and find another eyewitness, Alex Brown III. Green submitted

Brown's affidavit to the state courts on post-conviction relief (Doc. 19, pp. 14/25-15/25). Brown stated in his affidavit that,

> "he first thought that Raymond Green had fired the shot, but he noticed further that Raymond Green did not fire his gun *or at least did not see Raymond Green in possession of firing his gun.*" Alex Brown III says that *he assumed* the other young kid (Demarcus Scales) fired the shot in an attempt at shooting Raymond Green." (Emphasis added.)

Brown's testimony would not have absolved Green of culpability because Brown only states that he did not see Green firing his gun. Given the facts that Green's girlfriend Shacarra Booze (Doc. 26, p. 21/25), disinterested bystander Brenda Curry (Doc. 27, p. 5/25), and disinterested bystander Stayce Flowers (Doc. 27, p. 12/25) all testified they saw Green shoot Mitchell, Brown's testimony that he *assumed* Scales had done it, but that he did not actually see anything, would not have assisted Green's defense. Therefore, Green cannot show prejudice resulting from his attorney's failure to find Brown and introduce his testimony at trial.

This ground for habeas relief is meritless.

Ground 2 - Insufficient Evidence

Green also contends there was insufficient evidence to support Green's conviction for second degree murder, due to the fact that the 16-year-old Green was too immature to form the specific intent to kill.

The fact that Green was sixteen years old, by itself, does not negate specific intent. The weight of the evidence from the

eyewitnesses to the offense indicated that Green had the specific intent to commit murder. The fact that Green committed and was convicted of armed robbery, another specific intent crime, while he was released on bond pending trial for murder, also indicates that Green was "mature" enough to form specific intent to commit an offense. Finally, the state courts thoroughly reviewed this issue on direct appeal and found there was sufficient evidence to show Green had the specific intent to murder Mitchell and did not do so in "a sudden passion or heat or blood caused by provocation." The state courts made a reasonable determination of the facts in light of the evidence presented at trial.

This ground for relief is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Green's Section 2254 habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual**

findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana on the 31st day of August, 2011.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE